IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 12, 2007

Charles R. Fulbruge III
Clerk

No. 05-20639

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ERIC JERROD BOLDEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before REAVLEY, SMITH, and GARZA, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Eric Bolden was convicted of possession with intent to distribute cocaine, possession with intent to distribute a mixture containing more than five grams of cocaine base, and carrying a firearm during and in relation to a drug trafficking crime. He moved to suppress certain evidence that he claimed was seized in violation of his Fourth Amendment rights. The district court concluded that his rights were not violated. We affirm.

I.

Police officers Pat Siddons and Preston Moore were leaving an apartment when they heard nearby gunshots. Within seconds, a vehicle passed by, and the driver yelled to the officers that people were shooting guns around the corner; neither Simmons nor Moore stopped that vehicle to ask questions; instead they split up to find the shooters. Siddons drove his patrol car around the corner from which he believed the gunshots had come; he encountered a silver Jeep Cherokee that was "coming at [him]" at a "relatively fast pace."[1] He stopped the Jeep. Bolden was the driver. The time between the stop and the shots was less than one minute.

When Siddons exited his car, he observed four people in the Jeep. Not knowing whether they were the perpetrators, Siddons took a defensive position, drew his weapon, and ordered the occupants to hold their hands where he could see them. The occupants did not comply, so, unsure if they were hiding something or reaching for a weapon, Siddons called for back-up.

Moore, during that time, had gone the other way around the block. Someone yelled to him that people were shooting out of a green Jeep. Moore did not stop to ask questions. He turned the corner and observed Siddons' position; saw that there were no vehicles but the Jeep in the area; exited his vehicle; drew his gun; and supported Siddons.

Additional officers arrived. Siddons and Moore approached the Jeep. Moore repeatedlySSShe says eight timesSStold Bolden to keep his hands on the steering wheel, but Bolden kept "dip[ping] his hands between his legs." Moore believed that Bolden was "going for a gun."

The Jeep's passengers were ordered out of the vehicle. The officers observed a semi-automatic pistol on the driver's side floorboard in plain view. Co-

---

[1] Siddons did not testify, however, that the Jeep was speeding.

caine was also found on the driver's side floorboard. Four pistols, at least three of which were loaded, were found. Contending that it violated his Fourth Amendment rights for Siddons to stop the Jeep, Bolden moved to suppress the evidence.

## II.

### A.

"When this court reviews a district court's denial of a suppression motion, conclusions of law are reviewed de novo and findings of fact for clear error. The court views the evidence 'in the light most favorable to the prevailing party.'" United States v. Rojas Alvarez, 451 F.3d 320, 329 (5th Cir. 2006) (quoting United States v. Gibbs, 421 F.3d 352, 356-57 (5th Cir. 2005)).

### B.

The only question is whether Siddons, "in the context of the totality of circumstances confronting" him, had "a reasonable suspicion supported by articulable facts that criminal activity may be afoot" when he stopped the Jeep, or whether he merely had a "hunch or unparticularized suspicion . . . ." United States v. Jaquez, 421 F.3d 338, 340-41 (5th Cir. 2006). If the former, the stop was constitutional under Terry v. Ohio, 392 U.S. 1 (1968); if the latter, it was not. The district court concluded that Siddons' conduct was reasonable, finding that "rounding the corner and finding only one vehicle and that one apparently making an abrupt departure is sufficient [reason] to stop that vehicle to investigate whether they are witnesses, participants, or victims." We agree.

Bolden puts great weight on Jaquez, 421 F.3d at 340, in which this court held that there was not reasonable suspicion to conduct a warrantless stop where an officer received a report that "a red vehicle" was involved in gunshots. About fifteen minutes after receiving the report, the officer stopped a red car in

the vicinity of the shooting, an area known for its high crime rate. Id. We held that such scanty information was insufficient to justify a stop. Id. at 341.

From this, Bolden contends that Siddons violated the Fourth Amendment, because Siddons "had even less information supporting a determination of reasonable suspicion than did the officer in Jaquez," given that Siddons did not even know that a vehicle, much less a Jeep, was involved in the shooting, and the shooting was in the early evening, not late at night as in Jaquez.

This reliance on Jaquez is misplaced. The key difference from this case is the amount of time between learning of the shootings and responding, coupled with the proximity between the stop and where the shootings occurred. In Jaquez, more than fifteen minutes had passed. In that amount of time, a car can take a shooter many miles away from the scene of violence, so merely driving a red car in the relative vicinity of the shooting was not enough.

The situation is different where the amount of time is less than a minute. Then, it is reasonable to believe that the shooters are close, maybe very close. And when an officer sees a solitary vehicle containing more than one person leaving the precise spot where that officer has good reason[2] to believe that multiple persons were shooting less than a minute before, it is more than a "hunch" that those in the vehicle may be involved in the shooting. Granted, Siddons did not know that the shooters were in a Jeep or even a vehicle, but the law does not require that, before stopping the vehicle, Siddons knew with absolute certainty

---

[2] An anonymous tip, such as the driver's statement to the officers that people were shooting around the corner, can provide the reasonable suspicion necessary constitutionally to justify stopping a car, as long as it is reasonable in light of the "totality of the particular circumstances." See United States v. Hernandez, 477 F.3d 210, 214 (5th Cir. 2007). "Factors to be considered are: '(1) the credibility and reliability of the informant; (2) the specificity of the information contained in the tip . . . ; (3) the ability of the officers in the field to verify the information . . . ; and (4) whether the tip deals with active or recent activity.'" Id. (quoting Alabama v. White, 496 U.S. 325, 327-29 (1990)). Here, the tip was specific as to location of the shooting and dealt with "recent" or even ongoing "activity," and the officers could "verify the information," because they personally heard the gunshots.

that those in the Jeep were involved in the shooting. His belief need be only "reasonable," and it was.

Bolden argues that because the stop was justified, at least in part, as an attempt to identify witnesses, there was not a reasonable basis for stopping the Jeep. For this proposition he cites Illinois v. Lidster, 540 U.S. 419 (2004), where the Court actually upheld a suspicionless stop of an automobile to look for witnesses to a crime. Bolden reasons, however, that the Lidster stop was constitutional only because it was akin to the common practice of officers' approaching pedestrians to request voluntary cooperation with an investigation. See id. at 426-28. Because Siddons stopped the Jeep by drawing his weapon, Bolden argues that it was nothing like a request for voluntary cooperation.

Bolden misses the point. Even if Lidster stands for the proposition that Bolden ascribes to itSSa question we need not answerSSthere was sufficient "reasonable suspicion" to believe that those in the Jeep were actually the shooters, and thus Siddons was constitutionally authorized to stop the vehicle.[3] Just because it was also possible that the Jeep contained witnesses or victims does not negate the very real possibility that the lawbreakers were in the vehicle, especially given the timing and location and the Jeep's, its "relatively fast pace," and the nearly contemporaneous warning that Siddons received that the shooters were around the corner.

AFFIRMED.

---

[3] Reasonableness for Fourth Amendment purposes is analyzed under an objective standard. See, e.g., Whren v. United States, 517 U.S. 806, 811-13 (1996). Therefore, even if Siddons subjectively was unsure whether the Jeep contained witnesses, victims, or the perpetrators, it was objectively reasonable to stop the Jeep based on "reasonable suspicion" that the shooters were inside.