[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 13, 2010
JOHN LEY
CLERK

No. 10-10612
Non-Argument Calendar

_____

D.C. Docket No. 4:08-cr-00224-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

HAROLD SHAWN WILLIAMS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(September 13, 2010)

Before BLACK, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Harold Williams was arrested on gun charges after police investigating a

nearby gunfire incident stopped the car in which he was riding. After the district

court denied his motion to suppress a gun found during the stop, Williams conditionally pleaded guilty to the unlawful possession of a firearm under 18 U.S.C. § 922(g)(1). Williams now appeals, challenging the denial of his motion, and we must decide whether the police had reasonable suspicion to stop the car.

I

Officer Samuel Hunt was parked outside a public housing project in Savannah, Georgia, filling out paperwork, when he heard a gunshot. It was 1:30 in the morning, the streets were quiet, and having worked the area for two years, Officer Hunt knew that the housing project had its fair share of crime. Within a few seconds, a car quickly pulled out of one of the housing project's two exits and headed down the road. His suspicions aroused, Officer Hunt called for backup and pulled the car over.

Backup arrived a few minutes later, and another police officer standing just a few feet away saw Harold Williams, a passenger in the car, remove a handgun from his waistband and try to hide it under the center console. The police immediately arrested Williams and seized the gun, which later formed the basis for an indictment charging Williams with the unlawful possession of a firearm under 18 U.S.C. § 922(g)(1).

2

Williams moved to suppress the gun on the ground that Officer Hunt had not had reasonable suspicion to justify stopping the car. A magistrate judge recommended denying the motion, and the district court agreed. Williams then entered a conditional guilty plea reserving the right to challenge the denial of his motion to suppress. He now exercises that right, and we affirm his conviction.

## II

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend [even] to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Accordingly, the general rule is that law enforcement officials may not detain a person without probable cause to believe that he has committed a crime. But in the context of "necessarily swift action predicated upon the on-the-spot observations of the officer on the beat," the Supreme Court has crafted an exception to that rule: "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot," the officer may briefly stop the persons involved to confirm or dispel his suspicions. *Terry v. Ohio*, 392 U.S. 1, 20, 30 (1968).

In accordance with the Court's description of these "*Terry* stop[s]," "law enforcement agents may briefly stop a moving automobile to investigate a

3

reasonable suspicion that its occupants are involved in criminal activity." *United States v. Hensley*, 469 U.S. 221, 226 (1985). In addition, "the police are not automatically shorn of authority to stop a suspect . . . merely because the criminal has completed his crime and escaped from the scene." *Id.* at 228. "[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in . . . a completed felony, then a *Terry* stop may be made to investigate that suspicion." *Id.* at 229.

The only question here is whether Officer Hunt had reason to suspect that the occupants of the car he stopped had been involved in criminal activity.[1] "[T]he concept of reasonable suspicion is somewhat abstract," but this much is clear: we must consider the "totality of the circumstances" and determine for ourselves[2] whether Officer Hunt had a "particularized and objective basis for suspecting wrongdoing." *Arvizu*, 534 U.S. at 274, 273 (quotation marks omitted). "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it

---

[1] At the hearing on Williams's motion to suppress, Officer Hunt testified that he had also seen the car roll through a stop sign, although that information was not included in his incident report. Because he admitted, and the Government now concedes, that he stopped the car based solely on his suspicions of the occupants' involvement in a possible shooting, we do not decide whether Officer Hunt had probable cause to stop the car.

[2] *See Arvizu*, 534 U.S. at 275 ("[T]he standard for appellate review of reasonable-suspicion determinations should be *de novo*, rather than for 'abuse of discretion.'").

falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 274 (quotation marks and citations omitted).

Williams argues that Officer Hunt lacked justification to conduct a *Terry* stop because the housing project had two exits, Officer Hunt could see only one of them, and the shooter could have used other. But the law does not require absolute certainty or even probable cause before an officer stops a car; he need only reasonably suspect that its occupants are involved in criminal activity. When Officer Hunt saw a lone vehicle hurriedly pulling out of a high-crime housing project in the middle of the night within seconds of a gunshot, it was eminently reasonable of him to suspect that the car's occupants might have committed a crime. *Accord United States v. Bolden*, 508 F.3d 204, 206 (5th Cir. 2007) ("[W]hen an officer sees a solitary vehicle . . . leaving the precise spot where that officer has good reason to believe that multiple persons were shooting less than a minute before, it is more than a 'hunch' that those in the vehicle may be involved in the shooting."); *United States v. Henning*, 906 F.2d 1392, 1396 (10th Cir. 1990) (concluding that reasonable suspicion justified the stop of a lone car, moving quickly, that "emerged from the general area of an early morning gunshot heard by officers only seconds earlier" in a high-crime area).

The vehicle stop here was justified by Officer Hunt's reasonable suspicion, and the resulting search incident to Williams's arrest revealed a hidden gun. Accordingly, the district court did not err by denying Williams's motion to suppress the gun seized during the stop. His conviction is therefore

**AFFIRMED.**