# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 29, 2010

No. 09-60726

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CAHAFER BENJAMIN; KAO WOKOMA,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:08-CR-63

Before STEWART, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

At issue is whether officers of the Oxford, Mississippi Police Department had reasonable suspicion to stop Benjamin and Wokoma's car as part of a malicious-mischief investigation. The police did not; thus, we REVERSE the district court's denial of defendants' motions to suppress, VACATE defendants' convictions, and REMAND.

At 3:45 a.m., Officer Jeff Kellum received a dispatch to investigate a complaint of malicious mischief at an apartment complex. He arrived about five

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

minutes later and then interviewed the complainants for the next ten minutes. From the interview, he learned that someone had thrown something that had broken the window of the complainants' apartment. Next, Officer Kellum briefly surveyed the area outside of the window before calling other officers for assistance. Captain Libby Lytle and two other officers arrived within the next ten minutes, and they began searching the area. The officers had no evidence suggesting that the vandal was still at the apartment complex. Captain Lytle testified that the officers had searched "pretty much" the whole area and "were going towards" what later turned out to be defendants' car, when they saw that car pull out from a parking spot in the complex's lot and leave. The car was approximately fifty to sixty feet from the broken window. This occurred about ten to fifteen minutes after Captain Lytle had arrived at the apartment complex, and during that entire time, the officers had not seen any other activity. Captain Lytle pursued the car in her patrol car and pulled it over about a quarter mile from the apartment complex. When defendants rolled down their window, Captain Lytle smelled marijuana and saw bags of crack cocaine in plain view. After ordering defendants out of the car, the officers found additional crack cocaine and a firearm.

Defendants were indicted on drug and firearm charges. They moved to suppress the drugs and firearm, and the district court held a suppression hearing at which Captain Lytle and Officer Kellum testified. At the close of the evidence, defendants first argued that the police did not have reasonable suspicion for the stop because too much time had elapsed between the vandalism and when the officers noticed their car pulling out of the parking lot. Therefore, defendants contended that whoever had broken the window could have left long before the officers had even arrived. Defendants also argued that there was no evidence establishing that they were present when the vandalism occurred. The

2

district court rejected these arguments and denied the motion. Defendants then entered conditional guilty pleas, reserving their rights to appeal the suppression ruling.

When reviewing a denial of a motion to suppress evidence, we review factual findings for clear error[1] and the ultimate constitutionality of law enforcement action *de novo*. *Perez*, 484 F.3d at 739. The court must view the evidence presented at the suppression hearing "most favorably to the party prevailing below, except where such a view is inconsistent with the trial court's findings or is clearly erroneous considering the evidence as a whole." *United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993).

Temporary, warrantless detentions of individuals constitute seizures for Fourth Amendment purposes and must be justified by reasonable suspicion that illegal activity has or is taking place; otherwise, evidence obtained through such a detention may be excluded. *United States v. Rodriguez*, 564 F.3d 735, 740–41 (5th Cir. 2009). "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion "requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999). Courts determine whether the stop was reasonable by conducting a fact-intensive, totality-of-the-circumstances inquiry. *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001).

---

[1] The court found that defendants were the only people in the parking lot except for the officers and that the officers thought that defendants were either suspects or witnesses. In this case, these factual findings are not clearly erroneous. *United States v. Perez*, 484 F.3d 735, 739 (5th Cir. 2007) (citation omitted). However, as explained in greater detail below, they are not dispositive.

The parties contend that two of our decisions govern this case, *United States v. Jaquez*, 421 F.3d 338 (5th Cir. 2005), and *United States v. Bolden*, 508 F.3d 204 (5th Cir. 2007). Specifically, defendants analogize to *Jaquez* while the government analogizes to *Bolden*. Thus, we begin our inquiry with a discussion of these cases. In *Jaquez*, the officer responded to a "shots fired" incident. 421 F.3d at 340. Prior to the stop, the officer knew only (1) the general proximity of the incident, (2) that a red vehicle had been involved in the reported incident, and (3) that the incident occurred approximately fifteen minutes before the stop. *See id*. at 341. The officer testified that these reasons, along with the fact that the incident took place late at night and in an area known for its high-crime rate, caused him to stop the defendant as he drove a red vehicle in that general vicinity. *See id*. at 340. "We conclude[d] that the scant facts known to [the officer] when she stopped Jaquez were, as a matter of law, insufficient to support reasonable suspicion." *Id*. at 341. In so holding, we explained that, although the officer knew that a red vehicle was involved, she did not know anything about the driver or the occupants. *See id*.

In *Bolden*, two officers were leaving an apartment when they heard nearby gunshots. *See* 508 F.3d at 205. Seconds later, passengers in a vehicle coming from the area where the shots had been fired told the officers that people were shooting guns around the corner. *See id*. The officers split up to find the shooters. *See id*. One of the officers drove around the corner toward the gunshots and encountered a silver Jeep, with four passengers, moving quickly in his direction. *See id*. The officer stopped the Jeep. *See id*. Less than one minute had transpired between the shots and that stop. *See id*. The officers found cocaine and firearms in plain view. *See id*. Under these circumstances, we concluded that "when an officer sees a solitary vehicle containing more than one person

4

leaving the precise spot where that officer has good reason to believe that multiple persons were shooting less than a minute before, it is more than a 'hunch' that those in the vehicle may be involved in the shooting." *Id.* at 206. We also distinguished *Jaquez* by noting,

> The key difference from this case is the amount of time between learning of the shootings and responding, coupled with the proximity between the stop and where the shootings occurred. In Jaquez, more than fifteen minutes had passed. In that amount of time, a car can take a shooter many miles away from the scene of violence, so merely driving a red car in the relative vicinity of the shooting was not enough.

*Id.*

This case falls somewhere between *Bolden* and *Jaquez*. The facts here are certainly less compelling for the government than the facts in *Bolden*. Although the geographic proximities in both cases are comparable—approximately fifty to sixty feet here and "around the corner" in *Bolden*, 508 F.3d at 205—the temporal proximities are not. In *Bolden*, the time between the shootings and the stop was less than a minute. Here, at least fifteen minutes had transpired between when the vandalism had occurred—assuming that the vandalism occurred immediately before 3:45 a.m. when Officer Kellum had received the dispatch—and when Officer Kellum began searching the parking lot after interviewing the witnesses. And we have explained that perpetrators may drive many miles away in fifteen minutes.

A comparison with *Jaquez* is more instructive. On the one hand, there are many aspects of this case that make it less compelling for the government than the facts of *Jaquez*. Even viewing the facts in the light most favorable to the government, at least fifteen minutes had transpired. Moreover, in contrast to *Jaquez*, there is no evidence suggesting that this neighborhood in Oxford,

Mississippi was a high-crime area. In addition, the officers here had even less information about the suspect than the officer had in *Jaquez*: They knew nothing about the individual who had broken the window. In fact, they did not even know how many people were involved. They also did not know whether the vandal or vandals had come in a car (or on foot), let alone the color of the car. Furthermore, they had no information even suggesting that the vandal was still at the complex.

On the other hand, three facts bring this case closer to reasonable suspicion than the facts in *Jaquez*. First, defendants' car was presumably closer to the broken window—fifty to sixty feet—than Jaquez's car was from the shots fired—the "general vicinity." *United States v. Jaquez*, 421 F.3d 338, 340 (5th Cir. 2005). Second, the officers testified that, until defendants drove away, there was no other activity in the parking lot. There was no such evidence in *Jaquez*. *See id*. Third, when defendants drove away, the officers had already searched much of the parking lot and were going toward the area where defendants' car was located. *Jaquez* did not present such a scenario.

When viewed "in the context of the totality of circumstances," however, these three facts do not establish reasonable suspicion. *Id*. at 340–41. As explained, the officers knew absolutely nothing about the vandal or vandals other than that he, she, or they had broken a window. Unlike *Jaquez*, this window breaking did not occur in a high-crime neighborhood. Also, more than enough time had elapsed for the vandal to have departed by car or on foot after breaking the window. Finally, the officers' suspicion necessarily rested on an unreasonable assumption—that the vandal would have remained in the vicinity of the window that he had just broken, even after the police had arrived. Officer Kellum first arrived around 3:50 a.m. He spent the next ten minutes inside the

apartment, interviewing the complainants. If the vandal had not already fled, one would certainly expect that he would have done so during that ten-minute period, knowing that the police had arrived on the scene.

In sum, the totality of the circumstances demonstrate that the officers did not have reasonable suspicion to stop defendants' car. As a result, the drugs and firearm should have been suppressed as products of an unlawful search and seizure in violation of the Fourth Amendment. Accordingly, we REVERSE the district court's denial of defendants' motions to suppress, VACATE their convictions, and REMAND for further proceedings consistent with this opinion.