[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 28, 2011
JOHN LEY
CLERK

No. 11-11097
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-20511-JAG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEWAYNE JOSEPH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 28, 2011)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant Dewayne Joseph appeals his convictions and 352-month total

sentence for (1) possession of a firearm and ammunition by a convicted felon, in

violation of 18 U.S.C. § 922(g)(1); (2) possession with intent to distribute of five or more grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1); and (3) carrying or possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). We affirm.

## I. BACKGROUND

Late afternoon on April 20, 2010, police officers arrested Defendant Joseph after chasing him through the Little Haiti area of Miami, Florida. In a search incident to Joseph's arrest, officers found an empty gun holster in the right front waistband of his pants.

### A. Evidentiary Hearing on Motion to Suppress

Prior to trial, Joseph moved to suppress the gun holster. Joseph argued that he was arrested without probable cause and that therefore the evidence discovered incident to his arrest should be suppressed as the product of an illegal search and seizure.

At the suppression hearing before the district court, Officer Reinaldo Goyos testified that on the date of Joseph's arrest, he was participating in a multi-agency investigation into gang activity in the high-crime area of Little Haiti. Officer Goyos, riding in an unmarked vehicle, was going to assist a group of officers who had detained some individuals on the street. The officers were wearing police

attire, including vests that stated "police" on the back. At least one marked police vehicle was nearby.

Officer Goyos first saw Defendant Joseph when Joseph was about fifteen to twenty feet away from the group of police officers. Defendant Joseph, who was riding a bicycle away from the officers, looked back several times at the group of officers and vehicles. At that point, Officer Goyos decided to follow Joseph in his vehicle. Joseph began to pedal faster as he rode away from Officer Goyos's vehicle. After approximately half a block, Joseph jumped off his bicycle and left it on the sidewalk.

According to Officer Goyos, Defendant Joseph then turned toward him and started to reach in his waistband for what Goyos thought looked like a gun. At that point, Officer Goyos exited his vehicle and shouted several times: "Stop. Police. Stop." However, Joseph continued to flee and ran into the yard of a nearby house. As Officer Goyos pursued Joseph, he observed Joseph drop a dark object in the yard. Upon reaching that location, Officer Goyos discovered a firearm and a clear plastic ziplock bag, containing approximately thirty grams of crack cocaine.

The government also offered the testimony of Officer Mark Thomas at the hearing. Officer Thomas learned via police radio that police officers, including

Goyos, were chasing a man on a bicycle. Officer Thomas went to assist them and observed Joseph on the roof of a house. Officer Thomas identified himself and told Joseph to show Thomas his hands. Although Joseph initially complied, he later disappeared from view. Officer Thomas again commanded Joseph to show him his hands, and after a couple of seconds, Joseph reappeared and complied. Shortly thereafter, the officers brought Joseph off the roof and onto the ground, where he was arrested. Joseph was then searched, and the police discovered the gun holster on his waistband.

After listening to the witnesses' testimony and argument from both sides, the district court denied Joseph's motion and ruled the gun holster admissible at trial.

## B.    Trial Evidence

At trial, Officers Goyos and Thomas testified consistently with their testimony at the suppression hearing. Officer Goyos further stated that the firearm he retrieved from the ground was loaded. The government introduced the firearm, ammunition from the firearm, the bag of crack cocaine, and the gun holster as exhibits.

Additionally, Detective Odney Belfort testified as the government's expert in narcotics investigation and the distribution of crack cocaine. Based on his

4

experience and training, Detective Belfort stated that the purpose of possessing thirty grams of cocaine is to distribute it, not to use personally. Detective Belfort further testified that drug dealers typically carry firearms to protect themselves from other rival drug dealers because of their inability to summon police protection.

At the close of its case, the government read the parties' stipulation that: the firearm and ammunition traveled in interstate commerce, in accordance with 18 U.S.C. § 921(a)(3) and § 921(a)(17)(A); the bag of cocaine contained 30.3 grams of crack cocaine; and prior to April 20, 2010, Joseph was convicted of a felony. After the government rested, Joseph moved for judgment of acquittal, which the district court denied.

In his defense, Joseph presented the testimony of one witness, Samantha Shuler, who lived in the neighborhood where Joseph was arrested. Shuler presented her account of Joseph's arrest. Following her testimony, Joseph renewed his motion for acquittal, which the court denied. The jury convicted Joseph on all counts.

## C. The Presentence Investigation Report

The Presentence Investigation Report ("PSI") for Joseph assigned a base level offense of 24. The PSI increased the level by two for presence of a stolen

firearm and by four more for possession of a firearm in connection with another felony offense.  The PSI assigned Joseph six criminal history points,[1] which ordinarily would make Joseph's criminal history category III.  The PSI, however, determined Joseph was a career offender, which made his criminal history category VI, his offense level 37, and the resulting advisory guidelines range 360 months' to life imprisonment.  See U.S.S.G. § 4B1.1.

At the sentencing hearing on February 26, 2011, Joseph objected (1) to the PSI's four-level enhancement for possession of a firearm in connection with another felony offense, and (2) to the factual assertions in the PSI's criminal history summary.  The district court overruled his objections.  In mitigation, Joseph argued that the guidelines' sentence was unreasonable in light of his age (twenty-two years old), his two children, and the fact that Joseph, a "minor" drug dealer, was being sentenced similarly to "top members of one of the largest Colombian drug trafficking cartels in history" and the Gambino mafia.

After listening to Joseph's argument, the district court applied a two-level reduction pursuant to U.S.S.G. § 3E1.1 because Joseph cooperated with authorities and appeared to accept responsibility for his conduct. This reduced Joseph's

---

[1]Joseph had two prior convictions for possession of cocaine with intent to sell.  He also had convictions for possession of cannabis with intent to sell, resisting with violence, burglary of an unoccupied structure, and third degree grand theft.

offense level from 37 to 35. The court agreed with the PSI's finding that Joseph was a career criminal offender. With an offense level of 35 and a criminal history category of VI, Joseph's advisory guidelines range became 292 months to 365 months. The court stated that it had "reviewed the [PSI]" and "considered the statements of the parties[,] . . . . the statutory guidelines," and the § 3553(a) factors.

The district court imposed a total sentence of 352 months' imprisonment. Joseph objected to the sentence because a sentence "below the career offender range would have been sufficient under [§] 3553." The court overruled his objection.

## II.  DISCUSSION

### A.  Motion to Suppress the Gun Holster

Defendant Joseph argues the district court erred in denying his motion to suppress the gun holster. A district court's ruling on a motion to suppress presents a mixed question of law and fact. United States v. Bautista-Silva, 567 F.3d 1266, 1271 (11th Cir. 2009). We review the district court's factual findings for clear error and review de novo the district court's application of the law to the facts. Id. This Court construes all facts in the light most favorable to the prevailing party. United States v. Delancy, 502 F.3d 1297, 1304 (11th Cir. 2007).

A police officer may arrest an individual without a warrant if he has probable cause. United States v. Williams, 619 F.3d 1269, 1270 (11th Cir. 2010). Probable cause to arrest exists if the facts and circumstances within the officer's knowledge would cause a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense. Coffin v. Brandau, 642 F.3d 999, 1006 (11th Cir. 2011). In determining probable cause, we may consider "the collective knowledge of law officers if they maintained at least a minimal level of communication during their investigation." United States v. Willis, 759 F.2d 1486, 1494 (11th Cir. 1985).

Upon arrest, a police officer may search the arrestee to remove any weapons or evidence from the arrestee's person. Arizona v. Gant, 129 S. Ct. 1710, 1716 (2009). If probable cause for an arrest exists, evidence obtained during a search incident to that arrest is admissible. United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002).

Here, the district court did not err in denying Joseph's motion to suppress. Police officers were gathered on the street and detaining certain individuals. Joseph was about fifteen to twenty feet away from the group and riding away. Officer Goyos testified that he observed Joseph jump off his bicycle and reach in his waistband for what Goyos thought was a gun. Despite Officer Goyos's

commands to stop, Joseph continued to flee and sought refuge on the rooftop of a house. During his flight, Joseph dropped a dark object to the ground. When Officer Goyos reached that location, he discovered a firearm and a clear plastic ziplock bag containing crack cocaine.

Based on the facts and circumstances, the police officers possessed sufficient information to conclude that Joseph had committed a crime. Therefore, the district court did not err in denying Joseph's motion to suppress the gun holster evidence obtained incident to his arrest.

**B.     Sufficiency of the Evidence**

Joseph argues that the evidence presented at trial was insufficient to prove the charges in the indictment beyond a reasonable doubt. We review <u>de novo</u> a district court's denial of judgment of acquittal on insufficiency-of-the-evidence grounds. <u>United States v. Browne</u>, 505 F.3d 1229, 1253 (11th Cir. 2007). We view all evidence and all reasonable inferences therefrom in the light most favorable to the government to determine whether a reasonable fact finder could have found the defendant guilty beyond a reasonable doubt. <u>Id.</u> However, because the jury determines witnesses' credibility, we accept the jury's credibility determinations unless the testimony credited "is so inherently incredible, so contrary to the teachings of basic human experience, so completely at odds with

ordinary common sense, that no reasonable person would believe it beyond a reasonable doubt." United States v. Chancey, 715 F.2d 543, 546 (11th Cir. 1983).

The government must prove each element of the charged offenses beyond a reasonable doubt. To sustain a conviction for a violation of 18 U.S.C. § 922(g)(1), the government must establish that the defendant was a convicted felon in knowing possession of a firearm that was in or affected interstate commerce. United States v. Deleveaux, 205 F.3d 1292, 1296-97 (11th Cir. 2000).

To sustain a conviction for a violation of 21 U.S.C. § 841(a)(1), the government must prove that the defendant knowingly possessed a controlled substance with the intent to distribute it. United States v. Faust, 456 F.3d 1342, 1345 (11th Cir. 2006). A jury can infer an intent to distribute based on circumstantial evidence, such as the quantity of the drugs possessed and the presence of firearms. United States v. Marszalkowski, 669 F.2d 655, 662 (11th Cir. 1982).

Finally, to sustain a conviction for a violation of 18 U.S.C. § 924(c)(1)(A), the government must establish that the defendant possessed a firearm that helped, furthered, promoted, or advanced a drug crime. United States v. Mercer, 541 F.3d 1070, 1076 (11th Cir. 2008). The mere presence of a gun during a drug trafficking offense is not sufficient by itself. United States v. Timmons, 283 F.3d 1246, 1253

10

(11th Cir. 2002). There must be some nexus between the firearm and the drug trafficking. Mercer, 541 F.3d at 1076. The nexus may be established by various factors, including "accessibility of the firearm," "whether the firearm is loaded," and the "proximity of the firearm to the drugs or drug profits." Id. at 1076-77.

We conclude the government presented ample evidence from which the jury could convict Defendant Joseph on all three charges. The government's evidence included Officer Goyos's testimony about observing Joseph drop a dark object to the ground and immediately finding a loaded firearm and bag of crack cocaine there. Joseph had an empty gun holster, which corroborated Officer Goyos's testimony that Joseph dropped a dark object. Moreover, Johnson did not stop on command but fled to a rooftop. The government's expert, Detective Belfort, also testified about the purpose of thirty grams of crack cocaine. Although Joseph argues that "there were serious discrepancies" in the police testimony, credibility determinations are for the jury. Joseph had the opportunity to cross-examine the government's witnesses. He did so. The government's evidence that the jury credited does not come close to being "so inherently incredible, so contrary to the teachings of basic human experience, so completely at odds with ordinary common sense, that no reasonable person would believe it beyond a reasonable doubt." Chancey, 715 F.2d at 546. The evidence presented by the government

11

was sufficient for a reasonable jury to find beyond a reasonable doubt that Joseph committed the crimes charged.

## C.  The Reasonableness of Joseph's Sentence

Finally, Joseph challenges the reasonableness of his 352-month sentence. We review a district court's sentencing decision under an abuse of discretion standard, using a two-step process. United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010), cert. denied, 131 S. Ct. 1604 (2011). First, we ensure the sentence contains no significant procedural error, such as failing to consider the § 3553(a) factors or treating the guidelines as mandatory. Id. Second, if the sentence is procedurally sound, we assess the sentence's substantive reasonableness. Id. at 734-35. While our review is deferential, we nonetheless "evaluate whether the sentence imposed serves the purposes reflected in § 3553(a)." United States v. Crisp, 454 F.3d 1285, 1290 (11th Cir. 2006). "If the district court's sentence is within the guidelines range, we expect that the sentence is reasonable." Alfaro-Moncada, 607 F.3d at 735.

Defendant Joseph has shown no procedural or substantive error in his sentence. Joseph argues the district court did not adequately consider the § 3553(a) factors. We disagree. This Court previously has declared that a district court's "explicit[] acknowledg[ment] that it had considered [the defendant's]

12

arguments at sentencing and . . . considered the factors set forth in § 3553(a)" is sufficient. United States v. Scott, 426 F.3d 1324, 1330 (11th Cir. 2005). The district court considered the parties' statements, the guidelines, and the § 3553(a) factors. Thus, Joseph's sentence was procedurally sound. See Scott, 426 F.3d at 1330.

As to substantive reasonableness, the district court imposed a sentence on the lower end of the applicable guidelines range. Given Joseph's extensive criminal history, we cannot say the district court's sentencing decision was an abuse of discretion.

Joseph's convictions and 352-month total sentence are affirmed.

**AFFIRMED.**