[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12946
Non-Argument Calendar

_____

D.C. Docket No. 8:16-cr-00312-EAK-MAP-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ISEAL DIXON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 6, 2018)

Before MARTIN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Minutes after a victim of armed robbery described his attackers to 911,

police stopped and frisked Iseal Dixon, who matched the victim's description.

Dixon had a handgun in his pocket and was eventually convicted and sentenced for possession of a firearm by a felon, 18 U.S.C. § 922(g)(1).[1] On appeal, Dixon argues that the gun evidence should have been suppressed because the victim's description did not give the police reasonable suspicion to stop him, in violation of the Fourth Amendment. Dixon also argues that his previous Florida robbery convictions are not crimes of violence for purposes of the Sentencing Guidelines, and that § 922(g) is unconstitutional. Because all of these arguments fail, we affirm the district court.

## 1.  The *Terry* stop

At about 10:20 p.m., a bicyclist on the Pinellas Trail was robbed by two men who fired a gun at him. The victim called 911 and described his assailants as two black men on foot wearing all black clothing. He told the 911 operator that he thought he could still see his attackers down the trail under the 34th Street overpass. This information was radioed to police officers in the area.

At 10:28, three separate officers saw Dixon walking across 34th Street just south of the Pinellas Trail overpass. Dixon is a black man and was wearing black shorts but no shirt. Officer Carvin suspected that Dixon might have been involved in the robbery and approached Dixon, asking him to stop and talk with him. Dixon

---

[1] "It shall be unlawful for any person . . . who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition."

2

stopped briefly and then continued walking away. Officer Carvin grabbed Dixon's arm and informed him that he was going to pat him down for officer safety. Dixon began to walk away again, so Carvin and another officer handcuffed Dixon while they patted him down for weapons. They discovered a loaded .380 pistol in the pocket of Dixon's shorts. Following a records check that revealed Dixon was a convicted felon, Dixon was arrested. But the robbery victim could not identify Dixon as one of his attackers.

Upon prosecution for being a felon in possession of a firearm, Dixon moved to suppress the gun evidence as illegally obtained in violation of his Fourth Amendment rights. A magistrate judge held a hearing in which four police officers testified and audio recordings of the victim's 911 call and the police radio dispatches were played. The magistrate judge concluded that the stop of Dixon was reasonable and recommended that the district court deny the motion to suppress, which it did after adopting the factual findings of the magistrate judge. Dixon now appeals that denial.

When reviewing the denial of a motion to suppress, we review the district court's factual determinations for clear error, and the application of the law to those facts *de novo*. *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007). We construe all facts in the light most favorable to the prevailing party— here, the government. *Id.* at 1235–36.

The Fourth Amendment protects one's person against "unreasonable searches and seizures." U.S. Const. amend. IV. But a police officer "may conduct a brief, warrantless, investigatory stop of an individual when the officer has a reasonable, articulable suspicion that criminal activity is afoot, without violating the Fourth Amendment." *United States v. Hunter*, 291 F.3d 1302, 1305–06 (11th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). To be permissible, "[t]he totality of the circumstances must support a finding of 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the stop and frisk." *Id.* at 1306 (quoting *Terry*, 392 U.S. at 21). That reasonable suspicion is determined from the collective knowledge of the officers involved in the stop. *United States v. Williams*, 876 F.2d 1521, 1524 (11th Cir. 1989).

We conclude that the stop of Dixon was reasonable in view of the totality of the circumstances. Rather than relying on a mere hunch[2] or a vague description such as "a black male," the police stopped Dixon based on discrete facts in addition to his race and sex: that he was on foot, wearing all black clothing, and near the Pinellas Trail and 34th Street eight minutes after the robbery was reported, very near where the victim had last seen the perpetrators. Dixon matched all five of

---

[2] Although reliance on a "mere hunch" alone cannot justify a stop, *United States v. Arvizu*, 534 U.S. 266, 274 (2002), Officer Carvin's acquiescence to defense counsel's colloquial use of the word "hunch" does not override his clear testimony about the specific facts that led him to stop Dixon.

these descriptors.[3] The police could reasonably infer from those five points of correspondence that Dixon may have been one of the armed robbers and that he may have posed a danger to the officers' safety.

Dixon argues that he did not reasonably match the victim's description because of three additional attributes the victim would have mentioned if Dixon had been his assailant: Dixon was shirtless and had facial hair and tattoos. We disagree. It was reasonable for the police to infer that a suspect might have discarded an article of clothing in flight and that Dixon's facial hair and tattoos might not have been obvious in the scuffle in the dark.

Furthermore, the police properly relied on proximity—both physical and temporal—to support their suspicion that Dixon may have been involved in the robbery. An individual's proximity to illegal activity may be considered as part of the totality of circumstances. *Hunter*, 291 F.3d at 1306; *United States v. Williams*, 619 F.3d 1269, 1271 (11th Cir. 2010). The officers spotted Dixon eight minutes after the robbery, in precisely the place the victim had said his attackers would be. Dixon was the first person they saw in that area who matched the victim's description.

---

[3] The victim also told police that his attackers were 5'8" tall (which Dixon is) and that one may have worn dreadlocks (which Dixon did not), but it is unclear whether the officers who stopped Dixon had this additional information. In any event, we affirm the district court's finding that Dixon was reasonably stopped based on the five facts that the victim initially reported to the 911 operator: the attackers' sex, race, clothing, location, and mode of transportation.

5

The district court's adoption of the magistrate judge's finding that all of the evidence "supported the supposition that Dixon might be one of the two robbers and that he might be armed and dangerous" was not clearly erroneous. We conclude that those facts rendered the officers' suspicion of Dixon reasonable and that the stop of Dixon was therefore not an unreasonable seizure in violation of his Fourth Amendment rights. We affirm the denial of Dixon's motion to suppress.

## 2.  The constitutionality of § 922(g)

Dixon makes two additional arguments for the first time on appeal, which we discuss in turn. Because he did not raise these issues in the district court, we review for plain error: "We may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Martinez*, 407 F.3d 1170, 1173 (11th Cir. 2005) (internal quotations omitted).

First, Dixon argues his conviction should be vacated because the statute under which he was convicted, 18 U.S.C. § 922(g), is unconstitutional facially and as applied to him for violating the Commerce Clause, U.S. Const. art. I, § 8, cl. 3. Specifically, he argues that mere possession of a firearm is a non-economic activity

6

that does not substantially affect interstate commerce. This argument is fully foreclosed by our binding precedent,[4] and the district court did not plainly err.

We have held that § 922(g) is facially constitutional as an exercise of Congress's Commerce Clause power. *United States v. McAllister*, 77 F.3d 387, 389 (11th Cir. 1996). Regarding as-applied challenges to the statute, we have held that the Commerce Clause requires only a "minimal nexus" to interstate commerce; the government must prove only that a firearm was manufactured in a state other than the one in which the defendant possessed it. *See United States v. Wright*, 607 F.3d 708, 715–16 (11th Cir. 2010). Because Dixon stipulated at trial that "[t]he firearm and ammunition were manufactured outside the State of Florida and therefore traveled in or affected interstate commerce," this argument also fails.

### 3.  The sentencing enhancement

Dixon challenges his 57-month sentence[5] for the first time on appeal. Under the advisory Sentencing Guidelines, Dixon's base offense level was enhanced because of his two prior felony convictions for crimes of violence, U.S.S.G.

---

[4] "Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court." *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).

[5] The advisory Guideline range was 57 to 71 months' imprisonment.

§ 2K2.1(a)(2),[6] namely, two convictions for robbery under Florida law.[7] The Guidelines' definition of "crime of violence"[8] includes robbery both in its list of enumerated crimes and in its inclusion of the use of force as a qualifying element. Dixon argues that Florida's definition of robbery is broader than the Guidelines' and does not necessarily require the use of violent force, so his convictions do not qualify as crimes of violence. But we have previously held to the contrary. *See United States v. Lockley*, 632 F.3d 1238, 1241–45 (11th Cir. 2011) (holding that Florida robbery is categorically a "crime of violence" under both the enumerated and elements clauses of U.S.S.G. § 4B1.2(a)). Because this argument is also foreclosed by our binding precedent, the district court did not plainly err.

Dixon's conviction and sentence are **AFFIRMED.**

---

[6] Base offense level raised to 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of . . . a crime of violence . . . ."

[7] "'Robbery' means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear." Fla. Stat. § 812.13(1).

[8] "The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
  (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
  (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery . . . ." U.S.S.G. § 4B1.2(a).

8