UNITED STATES of America,
Plaintiff-Appellee,

v.

Jerome HALL, Hampton Arthur Porter, and Kevin Andrew Navarre, Defendants-Appellants.

No. 76-1621.

United States Court of Appeals,
Fifth Circuit.

Aug. 18, 1977.

Upon review of all of the pleadings now before me, I am convinced that my prior reliance on whatever difference in connotation there may be between "meet" and "implement" was misplaced. Upon consideration of the clear and convincing legislative history and upon further reflection on the statutory language itself, I must conclude that section 301(b)(1)(C) demands that water quality standards, including those established pursuant to Section 303 of the 1972 Act amendments, be fully achieved not later than July 1, 1977. (*Second Modification to Decision of the Administrator,* A. 202).

As a result of this modification, EPA is now in agreement with the State's claim that section 301(b)(1)(C) requires that all limitations based on water quality standards be fully achieved by July 1, 1977. U.S. Pipe, however, has challenged petitioners' assertions on this point. The company urges this court to adopt the distinction between "meet" and "implement" since rejected by the Administrator. In view of our conclusion that the existing water quality standard applicable to Five Mile Creek does not impose any more stringent limitations than BPT, we find it unnecessary to decide whether this distinction is valid. In addition, we pretermit any decision as to the validity of the limitations included in the permit to meet water quality standards.

Bernard S. Dolbear (Court-appointed), New Orleans, La., for Hall.

Michael H. Ellis (Court-appointed), New Orleans, La., for Porter.

John Volz, Federal Public Defender, New Orleans, La.( Court-appointed), Richard T. Simmons, Jr., Asst. Federal Public Defender, New Orleans, La., for Navarre.

Gerald J. Gallinghouse, U. S. Atty., Ernest C. Chen, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before MORGAN and HILL, Circuit Judges, and NOEL, Senior District Judge.*

NOEL, Senior District Judge:

Defendants, Jerome Hall, Hampton Arthur Porter, and Kevin Andrew Navarre, after trial by jury, were convicted of the armed robbery of approximately $61,000.00 from the First Bank of Slidell, Louisiana, a bank then federally insured, in violation of 18 U.S.C. § 2113(a), (d) and 18 U.S.C. § 2. In this appeal, defendants raise only one contention worthy of discussion; that is, whether the trial court erred in denying defendants' motion to suppress evidence seized in the warrantless search of their car. We affirm on the grounds that the police had probable cause to search.

At approximately 1:36 p. m. on December 1, 1975, the First Bank of Slidell was robbed by two armed men with a sawed-off shotgun and a chrome revolver. As the robbers left the bank, they entered a cab driven by a third man. Two of the robbers were black men and the third was described as either a black with a light complexion or a white man. These three men then drove to

* Senior District Judge of the Southern District of Texas, sitting by designation.

a residential area where they abandoned the cab and drove off in a red 1969 two-door Ford. The change in automobiles was broadcast over the Louisiana State Police radio at 1:49 p. m.

Lieutenant Wicker, of the state police, after hearing the initial broadcast headed towards Slidell to assist in the search for the three armed men. After hearing the broadcast of the change to the red Ford, he observed a red 1969 Ford containing a single occupant proceeding away from Slidell. This car was not violating any traffic laws. The driver of the red Ford was a lightly complexioned black man. Lt. Wicker turned around, followed the red Ford and signaled the driver to pull over. The driver identified himself as Kevin Navarre but did not have a driver's license. The car had California license plates and in answer to Lt. Wicker's inquiry, Navarre responded that the car belonged to a friend of his. When Navarre produced the registration, the owner's name did not correspond to the name Navarre had given.

At this point, Lt. Wicker made a check on the California license plates through the National Crime Information Center (N.C.I.C.) to see if the car was stolen. The state police radio log reflects that the N.C.I.C. inquiry was made at 2:05 p. m.[1] When Lt. Wicker made the N.C.I.C. inquiry, he also asked for a complete physical description of the bank robbers. In response, he was told that one of the robbers wore a multi-colored shirt or jacket with blue pants. Lt. Wicker observed that Navarre was wearing a multi-colored jacket and blue pants.

Lt. Wicker, who had now been joined by Sgt. John Ramirez, asked Navarre if he minded if he looked in the trunk of the automobile. Navarre gave the keys to Wicker and stated that he did not know which one opened the trunk.[2] He carefully began to open the trunk, and after opening it about eight inches, he observed a man's

hand. Upon seeing the hand, Lt. Wicker slammed the trunk shut. Navarre was then handcuffed, both officers pulled out their guns, opened the trunk and directed the two men inside to get out slowly. Defendants Hall and Porter were in the trunk along with a sawed-off shotgun, a chrome revolver, and a pillowcase filled with approximately $61,000.00.

■ In determining the validity of the warrantless search, there are two points in time which must be examined: the initial stop of the vehicle, and the arrest of Navarre and the contemporaneous search of the trunk of the vehicle. If the initial stop was not justified, then the subsequent acts are illegal fruits of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 441 (1963); *United States v. McDaniel,* 550 F.2d 214 (5th Cir. 1977); *United States v. Robinson,* 535 F.2d 881 (5th Cir. 1976), *cert. denied,* 429 U.S. 918, 97 S.Ct. 309, 50 L.Ed.2d 283.

■ This Court has consistently recognized the right of a police officer to make an investigative stop of an individual if he reasonably suspects that the individual is involved in criminal activity. *United States v. McDaniel, supra; United States v. Worthington,* 544 F.2d 1275 (5th Cir. 1977); *United States v. Robinson, supra; United States v. Rias,* 524 F.2d 118 (5th Cir. 1976); *United States v. Rollerson,* 491 F.2d 1209 (5th Cir. 1974); *United States v. McCann,* 465 F.2d 147 (5th Cir. 1972), *cert. denied* 412 U.S. 927, 93 S.Ct. 2747, 37 L.Ed.2d 154 (1973). Probable cause is not required to justify an investigative stop; reasonable suspicion is sufficient.

The Supreme Court in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), held:

this Court [has] recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a

---

1. The N.C.I.C. check subsequently showed that the car was not stolen but this information was not available until after all three defendants were arrested and in custody.

2. The district court found that Navarre consented to the search. While not discussing the facts giving rise to the finding of consent, we note that the record amply supports this finding.

person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary . . . it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be the most reasonable in light of the facts known to the officer at the time.

407 U.S. at 145–46, 92 S.Ct. at 1923 (citations omitted).

*Adams v. Williams, supra,* and its predecessor, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), approved investigative stops of individuals based on reasonable suspicion. In *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the Supreme Court extended *Terry* and *Adams* and approved the investigative stopping of automobiles based on reasonable suspicion.

 The facts in this case support the initial stop of the vehicle. Lt. Wicker observed a red 1969 Ford driven by a light complexioned black male, proceeding away from the vicinity of a bank robbery within twenty minutes after the robbery. The description of the car and the driver fit the cursory description of one of the robbers. Based on this information, Lt. Wicker was justified in making the initial stop. There was minimal intrusion in a brief stop of the vehicle at that time.

*Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), involved facts similar to those in the instant case. There a service station was robbed and a description of the car and the two robbers was broadcast over the police radio. One of the robbers was wearing a green sweater and the other was wearing a trench coat. A light blue compact station wagon carrying four men was stopped within one hour after the robbery. One of the occupants was wearing a green sweater and there was a trench coat in the car. Based on this information, the Supreme Court held that there was probable cause to arrest the occupants of the car and to search the car.

While the facts in this case are very similar, it is not necessary to inquire whether the facts involved here amounted to probable cause. All that is necessary to justify the investigative stop is for the facts to create a reasonable suspicion. The most important factors in this case which support the finding of reasonable suspicion are the timing of the initial stop and its location. The bank was robbed at 1:36 p. m., the car was switched and reported on the police radio at 1:49 and the initial stop was made *before* 2:05. The car was stopped on a highway leading from the vicinity of the bank. It cannot be questioned that a red 1969 Ford driven by a lightly complexioned black male at that location and that time would create a reasonable suspicion in the police officer. A brief stop of this suspicious vehicle in order to obtain additional information was reasonable in light of the facts then known to the officer.

 Once legally stopped, additional facts may develop and the suspicion may grow into probable cause. *See United States v. McCann, supra,* 465 F.2d at 159; *United States v. Laird,* 511 F.2d 1039 (9th Cir. 1975). Navarre did not possess a driver's license, could not identify the registered owner of the automobile, and stated that he was coming from Bayou Liberty which was inconsistent with his present location and his statement that he was going to Covington. Lt. Wicker was then justified in detaining Navarre to determine if the car was stolen and to request a complete description of the bank robbers. When the description matched Navarre's clothing, the officers had probable cause to arrest Navarre and to search the car and its trunk. Having probable cause to believe that Navarre and the car were involved in the bank robbery, under these exigent circumstances, a search of the moveable vehicle without a warrant was justified. *Cham-*

**1118**

*bers v. Maroney, supra; Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The intermediate response adopted by the police officers in this case was the "essence of good police work" and was justified under the circumstances. When confronted with a reasonable suspicion, Lt. Wicker made a brief stop of the vehicle in order to obtain more facts. As they acquired more information which increased their suspicion, the officers expanded their investigation. Before the trunk was finally opened, the information they had obtained amounted to probable cause. The investigative stop was proper and the subsequent search and seizure were valid. The District Court, therefore, correctly denied the motion to suppress.

Accordingly, the judgments of conviction are AFFIRMED.