**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 15, 2005**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 04-10978

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADAM ORLANDO JAQUEZ,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
--------------------

Before JOLLY, WIENER, and DENNIS, Circuit Judges.

PER CURIAM:

Defendant-Appellant Adam Orlando Jaquez appeals the district court's denial of his motion to suppress a handgun found during a search of his car. The handgun was entered in evidence to support his conditional guilty plea of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). As we conclude that the investigative vehicle stop that led to the search was not supported by reasonable suspicion, we reverse the district court's suppression ruling, vacate Jaquez's conviction and sentence, and remand.

On the night of November 19, 2002, Abilene Police Officer Jennifer Holderead was on patrol when she received a call on her police radio that gun shots had been fired in the area of 10th and

Pine Streets in Abilene, Texas, a high crime area. The dispatcher indicated only that "a red vehicle" was involved in the incident.

Some 15 minutes later, Holderead observed a red car traveling away from the area where the shots were reported to have been fired. She stopped the car and told the driver, Jaquez, that she had pulled him over because his car matched the description of a vehicle involved in a report of gun fire in the area. Holderead asked Jaquez if he had any weapons in the vehicle and he responded that he did not. She then obtained his consent to search the vehicle. Holderead asked Jaquez to step out of the vehicle and patted him down for weapons, finding brass knuckles in his right front pants pocket. Jaquez told Holderead that he had recently been released from prison, and she radioed for backup. She then escorted Jaquez to the back of her patrol car to detain him, at which point Jaquez told her that there was a loaded firearm under the driver's seat of his vehicle. He said that the gun had been given to him by his girlfriend's mother for protection. Holderead confined Jaquez in the backseat of her patrol car while she retrieved the gun — a fully loaded .38 caliber pistol — from underneath the driver's seat of Jaquez's car.[1]

---

[1] Noting that the gun was fully loaded, and that there were no spent casings or extra ammunition in the vehicle, Holderead concluded that Jaquez probably was not responsible for the shots fired. She nevertheless arrested him for unlawful possession of a firearm.

Jaquez was subsequently indicted on a charge of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). At the hearing on Jaquez's motion to suppress the handgun, Holderead acknowledged that at the time she stopped Jaquez's car she had no specific information about the car reported to have been involved in the "shots fired" incident other than the fact that it was red; she had no further description of that vehicle or its occupants. It is undisputed that Holderead stopped Jaquez only because (1) he was driving a red car, (2) in the general vicinity of the incident reported 15 minutes earlier, (3) late at night, (4) in an area known for its high crime rate.

"There is no question but that the stopping of a vehicle and the detention of its occupants is a 'seizure' within the meaning of the Fourth Amendment." United States v. Shabazz, 993 F.2d 431, 434 (5th Cir. 1993) (citing Delaware v. Prouse, 440 U.S. 648 (1979)). Searches and seizures of motorists suspected of criminal activity are analyzed under the framework established in Terry v. Ohio, 392 U.S. 1 (1968). Shabazz, 993 F.2d at 434. An investigative vehicle stop is permissible under Terry only when "the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." United States v. Neufeld-Neufeld, 338 F.3d 374, 378 (5th Cir. 2003) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). An officer's mere hunch or unparticularized suspicion is not sufficient; rather, a minimal level of objective justification for the stop must be present. Sokolow, 490 U.S. at

3

7. The government bears the burden of showing the reasonableness of a warrantless search or seizure. United States v. Chavis, 48 F.3d 871, 872 (5th Cir. 1995).

The reasonableness of an investigative stop is a question of law, which we review de novo. See Goodson v. City of Corpus Christi, 202 F.3d 730, 737 (5th Cir. 2000). The precise issue to be determined is whether, when viewed in the context of the totality of circumstances confronting her, including all information available at the time that she decided to stop Jaquez, Holderead had reasonable suspicion to do so. See United States v. Silva, 957 F.2d 157, 160 (5th Cir. 1992) (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). We conclude, as a matter of law, that Holderead did not have reasonable suspicion to make an investigative stop of Jaquez's car and that the stop and subsequent search were therefore in violation of his Fourth Amendment right to be free of unreasonable searches and seizures.

The facts are undisputed that at the time she pulled Jaquez over, Holderead knew only that "a red vehicle" had been involved in a reported incident approximately 15 minutes earlier, in the same general area where she first spotted the car. Except for its color, she did not have any particular information about the vehicle, such as its make or model, or any description of its occupant(s). The sparse and broadly generic information provided by the dispatcher, without more, was insufficient to support a determination of reasonable suspicion, as required under Terry.

4

In arguing that such minimal information is enough to validate a vehicle stop, the government relies primarily on our decision in State v. Hall, 557 F.2d 1114 (5th Cir. 1977), in which we affirmed the convictions of three bank robbers, after holding that the law enforcement officer had reasonable suspicion sufficient to support an investigative stop of their vehicle. But the officer in Hall had significantly more detailed information than Holderead had in this case. In Hall, the officer had been told to look for a "red 1969 two-door Ford," id. at 1116; Holderead knew only that she was looking for "a red vehicle." Moreover, the officer in Hall had been given a description of the bank robbers — "[t]wo of the robbers were black men and the third was described as either a black with a light complexion or a white man" — id. at 1115; Holderead had no information whatsoever concerning the driver or occupants of the vehicle for which she was looking. This case is substantially distinguishable from Hall. We conclude that the scant facts known to Holderead when she stopped Jaquez were, as a matter of law, insufficient to support reasonable suspicion.

It follows, therefore, that the stop was unlawful. "Under the 'fruit of the poisonous tree' doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation." United

5

States v. Rivas, 157 F.3d 364, 368 (5th Cir. 1998) (citing Brown v. Illinois, 422 U.S. 590, 602-03 (1975)).

The government contends in the alternative that even if the stop was not justifiable by reasonable suspicion, Jaquez consented to the search and thereby cured any previous taint. Even if given voluntarily, however, consent does not validate a search that is the product of an unlawful stop — seizure — and not an independent act of free will sufficiently attenuated to break the chain of events between the Fourth Amendment violation and the consent. See United States v. Chavez-Villarreal, 3 F.3d 124, 127-28 (5th Cir. 1993). "To determine whether the causal chain was broken, we consider: (1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct." Id. at 128; Brown, 422 U.S. at 603-04. The government bears the burden of proving admissibility. Chavez-Villarreal, 3 F.3d at 128.

Application of Chavez-Villarreal's tripartite test to the facts of the instant case leads inexorably to the conclusion that Jaquez's consent did not break the causal chain flowing from the unlawful vehicle stop. First, there was close temporal proximity between the unlawful investigative stop and Jaquez's consent to the search of the vehicle. His consent was obtained shortly after he was stopped and as an immediate step in the same series of events. Second, there were no material intervening circumstances between

6

the stop and the consent.  Finally, the unlawfulness of the stop and detention is particularly clear when viewed in the context of Holderead's statement that her sole reason for stopping Jaquez was to determine whether he had been involved in an earlier incident involving gun fire in the area.  Even after Jaquez told Holderead that he had no weapons, she nevertheless requested consent to search his vehicle, which suggests that the very purpose of her unlawful stop was to secure his consent to search the vehicle.  See Brown, 422 U.S. at 605 (finding "a quality of purposefulness" in an illegal arrest undertaken for "investigation" or for "questioning" and holding that such purpose supported suppression).  We conclude, therefore, that Jaquez's consent to the search did not cure the taint of the illegal stop.

The handgun found in Jaquez's car should have been suppressed because it was a product of an unlawful search and seizure in violation of the Fourth Amendment.  We accordingly REVERSE the district court's denial of Jaquez's motion to suppress the firearm, VACATE his conviction and sentence, and REMAND for further proceedings consistent with this opinion.

7