IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 28, 2009

Charles R. Fulbruge III
Clerk

No. 07-41170

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ROBERTO GONZALEZ

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas, Texarkana Division
USDC No. 5:07-CR-00004

Before WIENER, GARZA and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Roberto Gonzalez pleaded guilty to one count of bulk smuggling of cash out of the United States in violation of 31 U.S.C. § 5332 (2000). The district court sentenced Gonzalez to 18 months imprisonment. As part of his plea agreement, Gonzalez preserved his right to appeal the district court's denial of his motion to suppress evidence. Gonzalez now appeals that denial. He contends that a Texas state trooper's prolonged roadside questioning following a traffic stop constituted an unconstitutional seizure. Gonzalez claims

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

that, because of that unlawful seizure, his subsequent consent to a search of his vehicle was not voluntary, making the ensuing search unconstitutional and the evidence resulting from it subject to suppression under the exclusionary rule. Following a review of all of the circumstances surrounding Gonzalez's traffic stop, we hold that the search was legal because it was made after Gonzalez gave free and voluntary consent to the search. As we find that the consent was freely and voluntarily given, we need not decide whether Gonzalez's preceding detention for questioning by the Texas trooper was unconstitutional. We therefore affirm the denial of Gonzalez's suppression motion, albeit on reasoning somewhat different from that of the district court.

## I.  FACTS AND PROCEEDINGS

Late one afternoon in April 2006, Texas Department of Public Safety Trooper Joseph Hogue pulled Roberto Gonzalez over to the side of Interstate 30 in Titus County, Texas, after seeing Gonzalez's car swerve into the left (passing) lane, nearly hitting a car in the process before returning to the right lane. Once his patrol car and Gonzalez's car were parked on the shoulder, Trooper Hogue approached the passenger side of Gonzalez's car and leaned his arms on the sill of the open passenger-side window to converse with Gonzalez (We assume Hogue went to the passenger side because Gonzalez had stopped so close to the active right lane of the highway that speaking to him from the driver's side could have been dangerous to the officer). Hogue told Gonzalez the reason for the stop and asked for his driver's license and proof of insurance. (The entire encounter was recorded by the video camera in Hogue's patrol car. Although Hogue can be heard clearly throughout, Gonzalez can only be heard intermittently, because of the traffic noise and his distance from the microphone worn by Hogue).

When Gonzalez reached into his glove compartment to produce his insurance document, Hogue noticed a piece of paper with handwritten notes on it. Gonzalez appears to have rapidly covered it, but this cannot be seen on the

videotape.[1] Gonzalez's quick hand movement seems to have sparked Hogue's suspicion that Gonzalez wanted to hide what was on the paper, prompting Hogue to ask Gonzalez what the paper contained. Gonzalez responded that he had written down where and when he had refueled the car. Hogue asked Gonzalez a series of questions during this encounter, most having to do with how long Gonzalez had been driving, where he was heading, and, repeatedly, the purpose of the writing on the paper. After about three minutes of questioning, Hogue told Gonzalez he would issue a warning ticket for the driving infraction. The trooper went to his patrol car for a few minutes, then returned to Gonzalez's car to return Gonzalez's driver's license and hand him the written warning.

Again leaning on the windowsill, Hogue began a further inquiry into Gonzalez's travel plans, albeit unrelated to the reason for the stop.[2] Gonzalez mentioned that he was going to see his aunt, and, after a dozen or so other questions, Hogue asked Gonzalez if he had any luggage with him. Gonzalez replied that he did, whereupon Hogue asked several times if it was in the trunk. Gonzalez then offered to show Hogue the luggage.[3] It was not until his

---

[1] Following a few seconds of silence Hogue can be heard to ask "Did you have some directions there?"

[2] In his brief, Gonzalez makes much of Trooper Hogue's posture in leaning through the passenger window of Gonzalez's car. Although it is indeed difficult to imagine the individual who would feel free to drive off while an officer is leaning on (and into) his vehicle, we need not address whether this constituted an unconstitutional seizure to reach our conclusion today, and therefore we decline to consider the issue.

[3] The dialogue proceeded:

> Hogue: Where's your clothes?
> Gonzalez: In back.
> Hogue: In the trunk?
> Gonzalez: Yeah, in back.
> Hogue: In the trunk?
> Gonzalez: [inaudible]
> Hogue: You have clothes in there?
> Gonzalez: Yeah, you want to see?
> Hogue: Is it ok?

inspection of the luggage — and, presumably, the visible interior of the trunk — turned up nothing that the trooper asked Gonzalez if he could search the car. Gonzalez, who speaks in somewhat broken English throughout, said he did not understand the question. Hogue repeated it once in English and then again in Spanish: Hogue asked "no problema?" Gonzalez responded "no, no problem." In less than 30 seconds, Hogue discovered a plastic-wrapped bundle of United States currency inside a panel in the trunk.[4] He then placed Gonzalez under arrest. The entire incident took about 10 minutes.

Prior to pleading guilty, Gonzalez filed a motion to suppress the cash as fruit of the poisonous tree stemming from an unconstitutional seizure and search. The district court ruled that the seizure was constitutional and, therefore, that the ensuing search was constitutional as well. Gonzalez insists that (1) the officer did not have reasonable suspicion to extend the stop, and (2) the part of the stop following the return of his license was not consensual.

## II. ANALYSIS

### A. Standard of Review

We review for clear error the factual underpinnings of a denial of a motion to suppress.[5] We review the district court's conclusions of law de novo.[6] In our analysis, we construe all inferences in favor of the prevailing party, in this case, the government.[7]

### B. Consent to Search

A search following a valid consent, i.e., one that is freely and voluntarily

---

[4] The value of the cash totaled approximately $175,000.

[5] United States v. Williams, 365 F.3d 399, 403 (5th Cir. 2004).

[6] Id.

[7] United States v. Jenson, 462 F.3d 399, 403 (5th Cir. 2006).

given, is constitutional.[8] Gonzalez asserts that his consent was not freely given because he was being detained involuntarily at the time that he agreed to the trooper's search of the car's trunk. If consent to search is given during an unconstitutional seizure, the consent is valid only if it is the product of independent free will. To make that determination, our inquiry is two-pronged: (1) Was the consent voluntary?; (2) Was it the product of free will?[9] The government has the initial burden of demonstrating that the consent was free and voluntary.[10] We afford the district court's determination substantial deference;[11] our review is for clear error.[12]

Voluntariness is a fact question determined from the totality of the circumstances.[13] We consider a number of factors in our assessment, including: (1) the voluntariness of the individual's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the individual's cooperation with police; (4) his awareness of his right to refuse consent; (5) his education and intelligence; and (6) his belief that no incriminating evidence will be found.[14] As in all Fourth Amendment cases the touchstone of the inquiry is reasonableness.[15]

---

[8] See, e.g., United States v. Rodriguez, 835 F.2d 1090, 1093 (5th Cir. 1988).

[9] United States v. Dortch, 199 F.3d 193, 201 (5th Cir. 1999).

[10] See, e.g., Jenson, 462 F.3d at 407.

[11] In cases in which the district court's determination is based on testimony heard at a suppression hearing, this court affords an even greater level of deference. United States v. Kelley, 981 F.2d 1464, 1470 (5th Cir. 1993). In this case, however, the magistrate court, not the district court, heard the evidence so we do not apply the heightened standard. United States v. Mays, 466 F.3d 335, 342-43 (5th Cir. 2006).

[12] Dortch, 199 F.3d at 201.

[13] United States v. Shabazz, 993 F.2d 431, 438 (5th Cir. 1993) (quoting Kelley, 981 F.2d at 1470).

[14] Id. (quoting United States v. Olivier-Becerril, 861 F.2d 424, 426 (5th Cir. 1988)).

[15] United States v. Brigham, 382 F.3d 500, 507 (5th Cir. 2004).

Applying that analysis to the facts of this case, we conclude that Gonzalez's consent was voluntary. Hogue was not confrontational and did not speak in a manner so commanding of authority as to be intimidating.[16] Gonzalez was cooperative; in fact, he expressly offered the officer a view of his luggage.[17] Moreover, although Gonzalez's English was not fluent, he was conversant with the trooper, talkative even, and only showed hesitation when asked for permission to search, which question Hogue then repeated in Spanish. Against this backdrop, we cannot say that the district court's determination of voluntariness in this case was clearly erroneous.

This brings us to the second prong of the inquiry, free will. When an individual consents to a search while he is unconstitutionally detained, the government must demonstrate that there was a break in the causal chain between the unlawful detention and the act of consent.[18]

We conclude that Gonzalez's consent was an act of free will. Even if we assume arguendo that Trooper Hogue's act of leaning on the car's windowsill constituted an illegal seizure, Gonzalez's impromptu offer to show his luggage to Hogue was sufficient to break the causal chain. When Gonzalez asked Hogue if he would like a look at Gonzalez's luggage, the trooper had not asked to search the car. Gonzalez broached the subject before Hogue ever did so. On these

---

[16] See, e.g., Williams, 365 F.3d at 405.

[17] United States v. Estrada, 459 F.3d 627, 634 (5th Cir. 2006) (citing defendants' calm demeanor as indicative of voluntariness). Although it is the law of this circuit that a defendant's cooperation with police indicates voluntariness, we find some dissonance in a rule that punishes those who cooperate and rewards those who do not.

[18] United States v. Jaquez, 421 F.3d 338, 342 (5th Cir. 2005). "To determine whether the causal chain was broken, we consider: (1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct." Id. (quoting United States v. Chavez-Villarreal, 3 F.3d 124, 128 (5th Cir. 1993)).

facts,[19] we cannot accept that Gonzalez could freely offer an inspection of his luggage, then be unable to consent freely to a search of his car. Although the luggage inspection did not turn out to be the critical search, the effect of Gonzalez's offer was thenceforth to make him a free participant in the interview, regardless of his prior status. We are satisfied that Gonzalez's consent to the search of the trunk was voluntary and freely given, as a result of which the search was constitutional.

## III. CONCLUSION

As we conclude that Gonzalez's consent to search his vehicle is free of constitutional taint, we need not and do not reach the question whether the officer's detention of Gonzalez was an illegal seizure. The district court's denial of the motion to suppress is AFFIRMED.

---

[19] We note again that the other elements of the stop also tilt in favor of reasonableness. The display of police authority was minimal. We are not confronted with strong evidence of intimidation. The entire stop lasted no longer than 10 minutes. Still, we should not be perceived as saying that any offer by an individual such as Gonzalez's to have his luggage searched will always break the causal chain between an unconstitutional seizure and a consensual search.