**Affirmed and Opinion filed September 21, 2017.**



In The

# Fourteenth Court of Appeals

### NO. 14-16-00514-CR

**WILLIAM EARL TUTSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Cause No. 1355673**

## O P I N I O N

Challenging his conviction for aggravated robbery, appellant William Earl Tutson asserts that the trial court erred in denying his motion to suppress evidence and in refusing to charge the jury on the lesser-included offense of robbery. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The complainant, who was the assistant manager of an automobile parts

store, was returning from her lunch break when appellant told her to stop. The complainant turned around and saw that appellant had a gun. She stopped. Appellant pointed the gun at the complainant's chest and neck area and told her that he planned to take her purse and a bank bag filled with bills. Appellant told the complainant that he would shoot her if she tried to stop him. The complainant complied with appellant's directions and appellant took her purse and the bank bag. As the events unfolded, customers and coworkers inside the store began to take notice. One customer, an automobile mechanic, ran outside to try to help the complainant.

Appellant hopped into a car and left the scene driving north towards the freeway. One of the complainant's coworkers called 911 and described the car leaving the scene as a dark-colored Pontiac. Officer Marshall was in the vicinity and heard the dispatch, including the description of the car leaving the scene. Within minutes he saw a dark-colored Pontiac. As he began following the car, he noticed the car continually picking up speed in an apparent attempt to evade him. When he activated his lights to initiate a traffic stop, the car continued accelerating until it was traveling 80 miles per hour. As the pursuit was underway, Officer Marshall saw large sums of money fly out the passenger side of the car along with other items. The car began fishtailing as the driver lost control of it. Eventually the car spun to a stop, facing Officer Marshall's car. Both occupants of the car fled on foot.

Officer Marshall radioed a description of the passenger – later identified as appellant – to other police officers in the area, and told them the direction appellant appeared to be heading. Then Officer Marshall chased and caught the driver.

Meanwhile, Officer Black, having heard Officer Marshall's description of the fleeing suspect and also being in the vicinity, began looking around. A woman

made eye contact with the officer and made a discreet pointing motion. When Officer Black looked in the direction the woman was pointing, he saw appellant, standing still, staring at him with wide eyes. Officer Black took appellant into custody.

Both Officer Marshall and Officer Black returned to the scene with the suspects they had apprehended. Officer Marshall confirmed that appellant was the individual he had seen fleeing the car.

Appellant was indicted for aggravated robbery. The indictment contained two enhancement paragraphs alleging two prior felonies.

Appellant filed a motion to suppress Officer Marshall's identification of him. Following a hearing on the motion to suppress, appellant filed a supplemental motion to suppress in which appellant re-urged his objection to Officer Marshall's identification and argued that the trial court should suppress any evidence collected as a result of the traffic stop because Officer Marshall did not have reasonable suspicion to initiate the traffic stop. The trial court denied the supplemental motion to suppress.

Appellant pleaded "not guilty" to the charges, but pleaded "true" to the enhancement paragraphs. At trial, the complainant testified about the robbery and stated that appellant had a black handgun. The mechanic who had witnessed the events at first testified that he saw what "looked like a gun" and then clarified that he had seen a silver handgun. During cross-examination, defense counsel confronted the witness with the earlier statement that he had seen something that "looked like a gun." The mechanic denied making the statement and said that he had seen a gun.

At the jury-charge conference, appellant asked for a jury instruction on the

3

lesser-included offense of robbery. According to appellant, the mechanic's testimony, and evidence that police officers never found a gun, could each be interpreted as evidence that appellant did not have a gun when he robbed the complainant. The trial court refused to give the lesser-included-offense instruction.

The jury found appellant guilty as charged. The trial court sentenced appellant to thirty years' confinement. On appeal, appellant challenges the trial court's denial of the suppression ruling and refusal to give the jury a lesser-included-offense instruction.

## ANALYSIS

### A. Denial of Motion to Suppress

In his first issue, appellant asserts that the trial court abused its discretion in denying his motion to suppress evidence, arguing (1) the procedure used to obtain Officer Marshall's identification of appellant was impermissibly suggestive and (2) Officer Marshall illegally detained him because the officer lacked reasonable suspicion to conduct the traffic stop.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). As long as the record supports the trial court's determinations of historical facts, and mixed questions of law and fact that rely on credibility, we grant those determinations almost total deference. *Id.* We review the court's application of law to the facts de novo. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). When, as in this case, the trial judge does not make formal findings of fact, we uphold the trial court's ruling on any theory of law applicable to the case and presume the court made implicit findings in support of its ruling if the record

4

supports those findings. *Tyler v. State*, 491 S.W.3d 1, 3 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

### *Propriety of the Identification*

Appellant moved to suppress evidence of Officer Marshall's pretrial identification of appellant on the day of the offense. An out-of-court identification is inadmissible if a suggestive pretrial identification tainted it. *Santos v. State*, 116 S.W.3d 447, 451 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). To decide if a pretrial identification is tainted we consider whether the pretrial identification procedures were impermissibly suggestive. *Id.* If they were, we determine whether the suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Id.*

Appellant shoulders the burden to prove the unreliability of the out-of-court identification by clear and convincing evidence that (1) the pretrial identification procedure was impermissibly suggestive and (2) that it gave rise to a very substantial likelihood of irreparable misidentification. *Id.* Identification testimony is admissible if indicia of reliability outweigh the influence of an impermissibly suggestive pretrial identification. *Id.* "On-the-scene" or "show-up" identifications tend to be suggestive to some degree. *See Mendoza v. State*, 443 S.W.3d 360, 363 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Officer Black brought appellant to the scene and asked Officer Marshall if appellant was the individual Officer Marshall saw fleeing the car. Officer Marshall knew that Officer Black caught appellant while responding to Officer Marshall's radio call for assistance. This court has found show-up identifications not impermissibly suggestive when they occurred an hour after a robbery and the complainants were told that the individuals being presented in the show-up identification were not necessarily the individuals who committed the robbery. *See id.* at 364. Like the permissible

5

identification in *Mendoza*, the show-up identification in today's case occurred shortly after the suspects fled the scene. Officer Marshall saw the suspect fleeing the car shortly after the event. *See id.* But, unlike the identifier in *Mendoza*, Officer Marshall likely knew Officer Black caught appellant while responding to the radio call for assistance. *See id.* This knowledge made the procedure more suggestive.

We presume for the sake of argument that the identification procedure was impermissibly suggestive and address whether the presumably suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. To make this determination, we weigh the following factors:

(1) the opportunity of the witness to view the suspect at the time of the crime;

(2) the witness's degree of attention;

(3) the accuracy of the witness's prior description of the criminal;

(4) the level of certainty demonstrated by the witness at the confrontation; and

(5) the length of time between the crime and the confrontation.

*See Balderas*, 517 S.W.3d 756, 792 (Tex. Crim. App. 2016). We weigh these factors deferentially in a light favorable to the trial court's ruling. *Aviles-Barroso v. State*, 477 S.W.3d 363, 385 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). We then weigh the factors, viewed in this light, de novo against the "corrupting effect" of the suggestive pretrial identification procedure. *Id.*

With respect to the first factor, Officer Marshall testified that when appellant exited the car, appellant was facing him. Appellant ran towards Officer Marshall before fleeing the scene. Officer Marshall stated that he got a "good look" at appellant, observing appellant closely to make sure he did not have a gun. Officer Marshall radioed a description of appellant and appellant's direction of travel to

6

other police officers. Though Officer Marshall saw appellant for only a few seconds, the two stood in close proximity. Simply stated, the identifier had an imperfect, but good, opportunity to view appellant.

In considering the second factor, we note that Officer Marshall testified that at the time he focused intensely on appellant, drawing on his years of identification training. Relevant to the third factor, Officer Marshall radioed an accurate but somewhat undetailed description of appellant, describing him as a bald man in a black shirt. Appellant asserts that Officer Black did not use Officer Marshall's description in selecting appellant. Officer Marshall testified that he did not mention appellant's race, but Officer Black testified that the description he used to identify appellant included appellant's race. This discrepancy does not affect the reliability of Officer Marshall's identification.

The record contains no details about the fourth factor — the identifier's confidence level during the show-up identification— though we note no evidence of hedging or lack of confidence on Officer Marshall's part at trial. The fifth factor — the length of time between the crime and the confrontation — weighs against a misidentification because of the brief interval between Officer Marshall's first seeing appellant and his identification of him.

Weighing these factors against the influence of the lineup, we conclude that the indicia of reliability outweigh any corrupting influence from the show-up identification. *See Santos*, 116 S.W.3d at 455. Accordingly, we conclude the procedure did not give rise to a substantial likelihood of irreparable misidentification. *See id.* Thus, we conclude the trial court did not abuse its discretion in denying appellant's motion to suppress. *See id.*

7

*Allegedly impermissible detention*

Under his first issue, appellant also asserts that the trial court abused its discretion in denying his motion to suppress evidence because Officer Marshall did not have reasonable suspicion to initiate the traffic stop. *See Kothe v. State*, 152 S.W.3d 54, 61 (Tex. Crim. App. 2004) (holding passengers have standing to challenge traffic stops).

Under the Fourth Amendment, an officer must have reasonable suspicion to justify a warrantless detention that amounts to less than a full custodial arrest. *Kerwick*, 393 S.W.3d at 273. An officer has reasonable suspicion if the officer has specific, articulable facts that, combined with rational inferences from those facts, would lead the officer reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.* These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity relates to crime, but the likelihood of criminal activity need not rise to the level required for probable cause to arrest. *Id.* at 273–74.

The test for reasonable suspicion focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent. *Id.* at 274. The detaining officer need not be aware personally of every fact that objectively supports a reasonable suspicion to detain; instead, the cumulative information known to cooperating officers at the time of the stop must be considered in determining whether reasonable suspicion exists. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). A reasonable-suspicion determination must be based on the totality of the circumstances, and reasonable suspicion may exist even if the circumstances presented are as consistent with innocent activity as with criminal activity. *Kerwick*, 393 S.W.3d at 274.

Officer Marshall testified at the suppression hearing that he was out patrolling when he heard a call come over the air requesting a response to an aggravated robbery in his vicinity, and advising that the vehicle leaving the scene of the robbery was a dark-colored Pontiac. Seven minutes after the 911 phone call, and four minutes after the call dropped, Officer Marshall saw a dark-colored Pontiac driving towards him. He turned around and began following the car. As he did, the car accelerated. Believing the driver was attempting to evade him, Officer Marshall activated lights and sirens. A high-speed chase ensued. Eventually, the driver lost control of the car and when it came to a stop, the car's two occupants fled on foot.

Appellant contends that Officer Marshall did not have reasonable suspicion to turn on his lights and sirens because he had seen no traffic violations at the point he initiated the traffic stop. Officer Marshall was in the vicinity where an aggravated robbery had just occurred when he encountered the vehicle matching the description of the vehicle seen leaving the crime scene. Citing *U.S. v. Jaquez*, 421 F.3d 338 (5th Cir. 2001) and *State v. Perez*, 56 S.W.3d 796 (Tex. App.— Eastland 2001), *rev'd* 85 S.W.3d 817 (Tex. Crim. App. 2002), appellant argues that the vague description of the vehicle was insufficient to give the officer reasonable suspicion to initiate the traffic stop. *Jaquez* is a federal case that is not binding precedent on this court. *See Blackmon v. State*, 642 S.W.2d 499, 500 (Tex. Crim. App. 1982). The Court of Criminal Appeals reversed *Perez*. *See Perez*, 56 S.W.3d at 819. But, in any event, the facts in today's case give rise to greater suspicion than the facts in either of those cases.

Unlike in *Jaquez*, where the police officer initiated a stop solely based on the driving of a red car, the Officer Marshall conducted the stop on the strength of a more precise description — a narrow range of colors and a make of the vehicle.

9

*See Jaquez*, 421 F.3d at 341. Also unlike in *Jaquez*, after the officer began following that car, the driver picked up speed and took evasive action. The *Perez* court deferred to the trial court's finding that the *Perez* defendant did not match the description of the suspect. *See Perez*, 56 S.W.3d at 799. In today's case, we defer to the trial court's finding that appellant's vehicle matched the description of the suspect vehicle. The record supports the finding.

Officer Marshall stopped the vehicle in the vicinity of the robbery after noticing the vehicle matched the description of the vehicle leaving the crime scene, and as he pursued the vehicle, its driver took evasive action. These facts supported a reasonable suspicion that the vehicle was involved in the robbery that had just occurred. *See Johnson v. State*, 444 S.W.3d 209, 214 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The reasonable suspicion justified the warrantless detention.

We conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress, so we overrule appellant's first issue.

## B. Denial of Lesser-Included-Offense Instruction

In his third issue, appellant asserts that the trial court erred in denying his request that the trial court charge the jury on the lesser-included offense of robbery.

The Texas Code of Criminal Procedure provides, "[i]n a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." Tex. Code Crim. Proc. art. 37.08 (West, Westlaw through 2017 R.S.). To test entitlement to a lesser-included-offense instruction, we conduct a two-step analysis. *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011). In the first step, we decide whether the

purported lesser-included offense falls within the proof necessary to establish the offense charged. *Id.* at 68. To make this determination, we compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser offense. *Id.* Because robbery is a lesser-included offense of aggravated robbery, we move to the second step. *See Penaloza v. State*, 349 S.W.3d 709, 711 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

In the second step of the lesser-included-offense analysis, we see if there is some evidence from which a rational jury could acquit the defendant of the greater offense while convicting the defendant of the lesser-included offense. *Sweed*, 351 S.W.3d at 68. The evidence must establish the lesser-included offense as a "valid rational alternative to the charged offense." *Id.* We review all of the evidence presented at trial. *Id.* Anything more than a scintilla of evidence entitles a defendant to a lesser-included-offense charge. *Id.* Although a scintilla of evidence is a low threshold, "it is not enough that the jury may disbelieve some crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Id.* If some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations, then the standard is met and the instruction is warranted. *Id.*

Appellant contends that the evidence regarding whether he used a gun is open to different interpretations. The complainant testified that appellant had a black handgun in his right hand when he robbed her. The automobile mechanic testified, "I could see something in [appellant's] hand at the end of it looked like it was a gun." A few sentences later, the same witness testified that he could not tell what kind of a gun it was, but "you could tell it was like a gun." Immediately after

that, the prosecutor asked if appellant had a handgun and the automobile mechanic said, "yes." Before passing the witness, the prosecutor asked one more time if the automobile mechanic saw appellant using a gun and the automobile mechanic said "yes." On cross-examination, when defense counsel asked the witness about his testimony that he saw "something that looks like a gun," the witness said, "No, I said it was a gun." During cross-examination, the automobile mechanic maintained his position that he saw a gun. He said the gun was silver. Police testified that they did not find a gun, but the evidence showed appellant was throwing objects out of the car during a high-speed chase and then took off running on foot.

Appellant focuses on the automobile mechanic's testimony that he saw something that looks like a gun, but this testimony is not inconsistent with the witness's firm statements that he saw a gun. *See Penaloza*, 349 S.W.3d at 712–13. The only reasonable interpretation of the automobile mechanic's testimony is that he saw something that looked like a gun and, in fact, the thing he saw was a gun. The witness's testimony that he saw something that looked like a gun is not affirmative evidence that appellant did not use a gun. *See id.*

Appellant likens this case to *Nash v. State*, a case in which the Sixth Court of Appeals held that a defendant was entitled to an instruction on the lesser-included offense of robbery because the surveillance video conflicted with the complainant's statements that the defendant used an ice pick while committing the robbery. *See* 115 S.W.3d 136, 139 (Tex. App.—Texarkana 2003, no pet.) (noting that the object in the defendant's hand in the video was unclear, but "what is visible does not appear to be metallic or a weapon). *Nash* is not binding on this court, and, in any event, differs in key respects. The evidence in *Nash* contradicted the complainant's testimony. *See id.* By contrast, the automobile mechanic's

testimony that he saw something that looked like a gun does not contradict his testimony that he saw a gun. The record does not contain any affirmative evidence that appellant did not use a gun while robbing the complainant. *See Penaloza*, 349 S.W.3d at 712–13. Because the record does not contain affirmative evidence that appellant did not use a gun, the trial court did not err in refusing to charge the jury on the lesser-included offense of robbery. *See id.* We overrule appellant's second issue.

## CONCLUSION

The trial court did not abuse its discretion in denying appellant's motion to suppress evidence nor did the trial court err in refusing to the charge the jury on the lesser-included offense of robbery. We affirm the trial court's judgment.


/s/ Kem Thompson Frost
   Chief Justice


Panel consists of Chief Justice Frost and Justices Jamison and Busby.
Publish — TEX. R. APP. P. 47.2(b).