**Affirmed and Memorandum Opinion filed June 6, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00251-CR
### NO. 14-18-00252-CR

---

### JOSEPH LAJUAN WRIGHT, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1580469 & 1580509**

---

## MEMORANDUM OPINION

Challenging his convictions for aggravated kidnapping (Trial Court Cause No. 1580469; Appeal No. 14-18-00251-CR) and unlawful possession of a firearm by a felon (Trial Court Cause No. 1580509; Appeal No. 14-18-00252-CR), appellant Joseph Lajuan Wright, in a single issue, asserts that the trial court abused its discretion in denying his motion to suppress evidence seized during a warrantless search of his home. We affirm.

# I.     Background

Cedric Taylor (the "complainant") borrowed money from appellant and owed him $260.  On December 29, 2015, the complainant was kidnapped and taken to appellant's residence.  The complainant was handcuffed to the patio burglar bars and left outside.  During this time, appellant displayed a gun and demanded from the complainant the money he owed appellant. The next night, the complainant was brought inside the house and handcuffed to a long chain that was attached to an air conditioning unit.  The chain was long enough to allow him to use the restroom while still being handcuffed and attached to the AC unit.  On the morning of January 1, 2016, the complainant noticed a cell phone in the bathroom and called 911.  Officers with the Houston Police Department arrived shortly thereafter.

Officer Fernando Cardoza testified that when he approached the house he saw the complainant, in handcuffs, through one of the windows.  Officer Cardoza and other officers proceeded to the front door and knocked numerous times, but no one answered.  Eventually, appellant opened the door to the residence and claimed to be the only one inside.  He changed his statement, however, to include his girlfriend and another male, when both walked into the back area of the living room.   Based on appellant's inconsistent statements, Cardoza stopped everyone at the door and detained them by placing them in handcuffs in three separate patrol cars.  The officers then performed a protective sweep of the house to confirm no one else was inside.  While performing the sweep, Cardoza testified he saw the chain attached to the AC unit but not the handcuffs.

After the police spoke with appellant, appellant's girlfriend, and the complainant, Cardoza determined the complainant's statement of events to be more credible.  Cardoza asked appellant if he knew where the handcuffs were, and

2

appellant did not respond. Cardoza then asked appellant if he would sign a voluntary consent-to-search and appellant agreed. A search of appellant's house led to the recovery of the handcuffs, a gun, and a controlled substance.

The State charged appellant with three felony offenses arising from a single transaction: possession of a controlled substance, 4 to 200 grams, with the intent to deliver; aggravated kidnapping; and unlawful possession of a firearm by a felon. The cases were consolidated. Appellant filed a pretrial motion to suppress statements and evidence.

On March 21, 2018, the trial court held a hearing on appellant's motion to suppress. The trial court heard testimony from four witnesses. Officer Cardoza testified that he was the officer who requested that appellant sign a consent-to-search form for the home, to which appellant complied and printed and signed his name to the form. Officer Cardoza stated that, when he spoke with appellant about the consent to search, the appellant was not handcuffed, no weapons were drawn, the appellant was not under arrest, and that he was not speaking to appellant in a threatening manner. Officer Cardoza explained that he first showed the appellant a blank consent-to-search form and had the appellant stand there while he, Officer Cardoza, filled out the case number, the date, and the time; Officer Cardoza then had appellant spell his name and verify the address on the form. Officer Cardoza stated that he read the consent form aloud to appellant, and then handed the form to appellant to read, himself. Officer Cardoza stated that at no point in his conversation with appellant did appellant mention that he was on medication or that he suffered from posttraumatic stress disorder (PTSD). Officer Cardoza denied ever telling appellant that he could get his medication only if he signed the consent to search form. Officer Cardoza testified that he did not feel that appellant was impaired or emotional when he was requesting that appellant sign the consent-

to-search form, but rather that appellant seemed to understand what was being read and provided to him.

Officer Cardoza stated that other officers were on the scene and could have spoken with appellant, but that he did not believe that anyone else spoke with appellant regarding the consent to search. Officer Cardoza also remembered that appellant's relatives arrived at the scene later in the investigation, when the police were already searching and recovering items from inside the home.

The defense called appellant's sister, Julia Walton, to testify. Walton stated that she went to appellant's home that day because appellant had called earlier, and she was going there to pick up food. She stated that she pulled up to the scene and no one was outside of the home. She claimed that she was there when the police officers brought appellant out of the home and placed him in the patrol car. Walton stated that, while the officers were escorting appellant out of the home and prior to placing appellant in the patrol car, she heard appellant ask to get his medication. Walton testified that appellant requires medication due to PTSD, which he suffers from after being shot in 2013 or 2014; Walton also stated that when appellant is not on his medication, he gets paranoid, does not understand things, and is not calm. Walton stated that she heard the officer say to appellant that he could get his medication after he signed the consent form. Walton denied ever seeing appellant sign a consent-to-search form.

Next, the defense called appellant's and Walton's friend, Miavia Johnson. Johnson testified that she and Walton arrived at appellant's house at 7:20 A.M. Johnson stated that she did not know why she and Walton were going to the home, just that Walton had received a call from appellant. She claimed that when they arrived on the scene, she saw appellant being escorted out of the house along with a female. She denied seeing another male being escorted out and detained by the

4

police. Johnson claimed that she heard appellant ask for his medication while a police officer led him out of the home, and that the officer responded that appellant could get his medication once he signed the papers. She stated that, throughout her time on the scene, various officers went to the car where the appellant was detained, and that the appellant kept asking for his medication. Johnson said that each officer told him to sign the paper. Although Johnson stated she never saw appellant sign a consent-to-search form, the officers on the scene continued to request his consent for the full two to three hours that she was there.

Appellant testified at the suppression hearing. According to appellant, the police arrived at his house at 8:00 A.M., and that he was detained and handcuffed at that time. He claimed that a different officer than Officer Cardoza handcuffed him and placed him in the patrol car. Appellant stated that, on the way to being placed in the patrol car, he had a conversation with that officer about how he needed his medication. Appellant testified that he has been on his medication—which he takes for his PTSD—since 2013, and that he takes the medication one time a day at 11:00 A.M. when he wakes up. He stated that he had not yet taken his medication when the police detained him and that when he is not on his medication, he becomes unfocused, gets schizophrenic, and does not understand as much.

Appellant further testified that, while talking with the officer, he was having an episode. He stated that he told the officer that he needed his medication, and that the officer replied that if he signed the paper that he would get his medication. Appellant claims that he cannot remember the consent-to-search form and that it was never explained to him, but that he signed one document. When appellant was shown the consent-to-search form, he admitted that he signed it but stated that he signed it without reading it or having it read to him. He also stated that after he

5

signed it, officers kept coming up to him requesting that he sign the consent-to-search papers.

At the end of the suppression hearing, the trial court denied appellant's motion to suppress, finding that "a valid consent to search has been proven by clear and convincing evidence, that the search was legal; and, therefore, any subsequently discovered evidence was lawfully obtained."

On March 23, 2018, appellant was acquitted of the offense of possession of a controlled substance with intent to deliver but found guilty of the offenses of aggravated kidnapping and unlawful possession of a firearm by a felon. On March 25, 2018, the trial court sentenced appellant to confinement for thirty-five years for both offenses and ordered the sentences to run consecutively to a previous conviction and sentence for which appellant was on parole. On March 28, 2018, the trial court reassessed appellant's punishment for possession of a firearm by a felon to twenty years' confinement.[1] Appellant did not file a motion for new trial in either case. This appeal timely followed.

## II.    Standard of Review and Analysis

Appellant contends in a single issue the trial court abused its discretion in denying his motion to suppress evidence seized during a warrantless search of his home. Appellant argues the State's evidence at the suppression hearing did not support the finding by the trial court that appellant's consent to search was a voluntary consent.

---

[1] The trial court reassessed punishment because a thirty-five year sentence is outside of the statutory punishment range for the offense of unlawful possession of a firearm by a felon.

## A. Standard of review

When reviewing a trial court's ruling on a motion to suppress, we apply an abuse of discretion standard: we overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018); *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We use a bifurcated standard of review. *Cortez*, 543 S.W.3d at 203; *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017). When the record supports the trial court's determination of historical facts, as well as mixed questions of law and fact that rely on credibility, we grant the trial court's determinations almost total deference. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). We review *de novo* the trial court's application of the law to the facts. *Ramirez-Tamayo*, 537 S.W.3d at 35. When, as in this case, the trial judge does not make formal findings of fact, we uphold the trial court's ruling on any theory of law applicable to the case and presume the court made implicit findings in support of its ruling, if the record supports those findings. *Tutson v. State*, 530 S.W.3d 322, 326 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

"Under the Fourth and Fourteenth Amendments, a search conducted without a warrant based on probable cause is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' " *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). Consent to search is one such specifically established and well-delineated exception. *Id.*; *see Schneckloth*, 412 U.S. at 219. Consent must be voluntary. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010) (citing *Schneckloth*, 412 U.S. at 219). Voluntariness is a question of fact, and whether a law enforcement officer acts reasonably in relying on consent is determined from the totality of the circumstances. *Meekins*, 340 S.W.3d at 458–59. Federal law

requires that the State prove voluntary consent by a preponderance of the evidence; Texas law requires that the State prove voluntary consent by clear and convincing evidence. *Id*. at 459–60.

**B.    Analysis**

Appellant contends that he did not sign the written consent-to-search form voluntarily because he was coerced into signing by the officers when they refused to provide him with his medication until he signed.

It is undisputed that appellant printed and signed his name to a voluntary consent-to-search form. Officer Cardoza testified that, at the time appellant signed the consent form, appellant was not under arrest, but was merely being detained. Although appellant was not provided his statutory warnings before the consent form was shown and read to him, appellant was not handcuffed, and the officers did not have their weapons drawn. Officer Cardoza acknowledged that when he and the other officers on scene initially encountered the appellant they had their weapons drawn, but lowered. However, he stated that when he discussed the consent-to-search form with appellant once appellant was detained; appellant was not handcuffed and the officers had holstered their weapons. Officer Cardoza testified that he did not use force against appellant, and that appellant had the right to refuse to sign the form.

During the interaction with appellant in regard to the consent form, Officer Cardoza described appellant's demeanor as not impaired or emotional, and stated that he felt that appellant understood what he read to appellant from the consent form.

During the suppression hearing, the trial court heard conflicting evidence that would indicate that appellant did not voluntarily sign the consent-to-search form. Appellant, his sister (Walton), and longtime friend (Johnson) testified that

8

while appellant was detained and being escorted to the patrol car by the police, appellant asked for his medication from the officer. They all testified that when appellant requested his medication, the officer responded that he would not receive his medication until he signed the paperwork— presumably referring to the consent-to-search form. Appellant's and appellant's witnesses' testimony in this regard was flatly contradicted by the testimony of Officer Cardoza, who stated that the appellant never requested his medication or informed him of appellant's later-alleged issues with PTSD. Additionally, Officer Cardoza denied that he ever told appellant that he could not get his medication until he signed the consent-to-search form.

At a suppression hearing, the trial court determines the facts and may accept or reject any or all of the evidence presented. *Brooks v. State*, 76 S.W.3d 426, 430 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Appellant's and appellant's witnesses' testimony clearly conflicts with the testimony of Officer Cardoza. When viewing the "totality of the circumstances," the trial court was free to believe Officer Cardoza's testimony and disbelieve appellant's and appellant's witnesses' testimony. *See Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000) (affirming the trial court's denial of the defendant's motion to suppress on the basis of lack of consent, finding that, although "[the defendant's] mother and sister testified that the officers were never given permission to search [the defendant's] room[,] . . . the trial court was free to disregard this testimony and believe the police officers."); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990) ("The trial court is the sole fact finder at a hearing on a motion to suppress evidence and may choose to believe or disbelieve any or all of the witnesses' testimony."). Officer Cardoza's testimony clearly shows that appellant's consent was voluntary. Although the court did not make written

findings of fact, the trial court implicitly found the officer's testimony on this question to be credible. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (*en banc*). Based on the trial court's finding that "a valid consent to search has been proven by clear and convincing evidence" and the court's denial of the motion to suppress, we conclude that the court rejected appellant's and appellant's witnesses' testimony that appellant's consent to search was involuntary. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).

Deferring, as we must, to the trial court's determinations of credibility and historical facts when the trial court denied appellant's motion to suppress, we cannot conclude that the trial court abused its discretion in determining that appellant's consent was voluntary or that the State met its burden of establishing the voluntariness of appellant's consent by clear and convincing evidence. Accordingly, we overrule appellant's issue.

### III.    Conclusion

The judgment of the trial court is affirmed.


/s/    Margaret "Meg" Poissant
Justice


Panel consists of Justices Christopher, Hassan, and Poissant.

Do Not Publish —Tex. R. App. P. 47.2(b).